Allen, J.
The evidence of Mrs. Dickinson and Mrs. Oliver proves that the testator of the appellant was in possession of the slave which is the subject of this controversy, within five years before his death; *495 and that the negro was sent hy the testator to his son shortly after his marriage, as a loan. Mrs. Dickinson brought the slave to Richmond, and sent her to her son; but did not, as it seems, communicate the terms on which she was sent: nor does it appear that the son ever made any enquiries on this point. The omission of Mrs. Dickinson to mention the terms on which the testator sent the slave, could not affect his title. Mrs. Dickinson acted in this transaction, as his agent, and could only transfer such interest to the son as she was authorized to do by the delivery to her. At the most, the title of the son could only have been effectual by an actual adverse possession of five years; and no act of ownership in the mean time, on his part, could divest the title of the father, unless there was something to shew acquiescence or assent on the father’s part.
The son by his will did attempt to dispose of the slave : and it is said she remained after his death under the control of his executor until she was sold to the appellant; and that although the father survived his son for eighteen months, he never asserted any claim to the negro.
There is some conflict in the evidence as to the condition of the slave after the death of the son. Some of the witnesses declaring she was placed at Mr. Sizer’s by the executor of the son; and that he alone exercised any control over her. I think on this point, Mrs. Dickinson’s evidence is entitled to the most respect. She declares the slave was returned to the testator, and hired by him to Mrs. Sizer. Her position with regard to these parties, and her connection with the transaction, makes it most probable that her recollection would be more distinct than that of the other witnesses, having but a very remote interest in the subject. Her testimony as to the subsequent hiring, is confirmed by the will of her husband, in which he speaks of the negro as being then hired to Sizer. There is no evidence that he was apprised of any act of ownership over the *496 slave by the executor of his son. On the contrary, as the executor, whilst he sold all the other property of the son, did not expose this slave to sale, it is but fair to infer that the testator was not apprised of any pretensjon t0 the slave adverse to his own. The loan being established, it was terminated, if not at the death of the son, at least by the testator’s will, which was admitted to record within five years from the time he parted with possession. And the executor being apprised by the will when he qualified, of the title of his testator, cannot set up the possession subsequently held by him against those interested in the estate.
The claim of the appellant, even if the question of title were not clearly against him, is equally invalid on another ground. The testator disposed of this slave as part of his estate. After making a provision for his wife, by giving her property for life, he directs the residue of his estate, and that given to his wife for life, at her death, to be divided amongst his children, of whom the appellant was one. He has come in under the will, and his portion of the slaves has been allotted to him. “ Suppose,” says the Chancellor, in Wilson v. Lord Townshend, 2 Ves. jr. 696, “ a legacy is given you by one clause; by another, an estate of which you are in possession is given to another; while you'hold that you shall not claim the legacy. You cannot dispute the ownership.” And in Kinnaird V. Williams, 8 Leigh 400, this doctrine was affirmed by this Court. No question arises here as to the extent of the interest surrendered, for it is apparent that the interest of the appellant under the will greatly exceeds the value of the slave.
I am for affirming the decree.
Baldwin, J. concurred in Allen’s opinion.
Cabell, P. and Brooke, J. concurred in affirming the decree.